# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

MIRBEAU OF GENEVA LAKE LLC,

        Plaintiff,

v.                                      Case No. 08-CV-693

CITY OF LAKE GENEVA, TODD KRAUSE,
GARY DUNHAM, MARY JO FESENMAIER,
ARLEEN KROHN, LARRY MAGEE,
TOM SPELLMAN, DONALD TOLAR,
WILLIAM CHESEN, PENNY ROEHRER,
and FRANK MARSALA,

        Defendants.

_____

## ORDER

On July 25, 2008, plaintiff Mirbeau of Geneva Lake LLC, ("Mirbeau"), filed a summons and complaint in Walworth County Circuit Court against the City of Lake Geneva, Wisconsin, and members of Lake Geneva's City Council, seeking money damages, declaratory judgment, a writ of certiorari and attorneys' fees and costs. Mirbeau alleges that the named defendants violated Mirbeau's due process and equal protection rights under the United States Constitution and Wisconsin's constitution by denying Mirbeau's request for a change in zoning. Mirbeau's federal claims were brought pursuant to 42 U.S.C. § 1983. On August 14, 2008, defendants filed a notice of removal to this district. (Docket #1). The court's jurisdiction to adjudicate this case derives from 28 U.S.C. §§ 1331 and 1343(a)(3), as well as 28 U.S.C. § 1367(a).

On October 17, 2008, defendants moved to dismiss the case for failure to state a claim upon which relief can be granted. After reviewing defendants' motion and the complaint, the court was not convinced that Mirbeau had standing to bring this suit in federal court. Rather than remand the case immediately, the court granted Mirbeau leave to file a supplemental brief on the standing issue. (Docket #20). On December 26, 2008, Mirbeau filed a supplement brief along with a motion to amend its complaint. (Docket ## 21-23).

As an initial matter, the court will grant Mirbeau's motion to amend its complaint. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may seek leave to amend its complaint, and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Mirbeau seeks leave to amend its complaint to include allegations that clarify its standing to bring its federal claims in federal court. Defendants argue that allowing Mirbeau to amend its complaint would cause undue delay and would be futile since Mirbeau lacks standing. However, allowing Mirbeau to amend its complaint would not cause undue delay. The court is mindful that it was defendants who brought this case to federal court. Mirbeau's original complaint was, therefore, tailored for state court where standing requirements are generally less stringent. Moreover, Mirbeau's motion for leave to amend was made in response to the court's standing inquiry. Finally, for the reasons discussed below, the court does not consider Mirbeau's proposed amendments to its complaint to be futile. Before addressing the issue of standing,

and defendants' motion to dismiss, the court briefly reviews the facts of this case as alleged in the amended complaint.

## BACKGROUND

On April 23, 2007, Mirbeau entered into a purchase and sale agreement ("Agreement") with Geneva Ridge Joint Venture ("Geneva Ridge") whereby Mirbeau was to purchase, and Geneva Ridge was to sell, approximately 54.5 acres of land located in the City of Lake Geneva ("City"). Mirbeau hoped to develop a mixed-use "retreat, consisting of a boutique inn, a spa, fine dining, retail, banquet and conference facilities, and single-family residential cottages." (Am. Compl. ¶ 18, Docket #22). Geneva Ridge also planned to develop some adjacent land in conjunction with Mirbeau's project. (Am. Compl. ¶ 18). Before either party could proceed with these projects, however, Mirbeau and Geneva Ridge needed the City to change an otherwise applicable zoning classification from rural holding district to planned development district. (Am. Compl. ¶ 18). To that end, Mirbeau and Geneva Ridge filed a zoning amendment application ("Application") with the City. (Am. Compl. ¶ 17). The Agreement made the City's approval of the Application a condition of closing, and allocated responsibility for obtaining that approval to Mirbeau. The Agreement further provided that approval was to be obtained within 12 months of the Agreement's effective date. (Am. Compl. ¶ 19).

As part of the approval process, Mirbeau alleges that it spent approximately $675,000 on a general development plan, a traffic impact analysis and a natural

-3-

resources protection plan, among other things. (Am. Compl ¶ 27). Mirbeau representatives also apparently met with multiple City officials during the application process. (Am. Compl ¶¶ 20-22). Initially, Mirbeau alleges, the Application moved relatively smoothly through the approval process, with Mirbeau gaining support for its Application from the city planner, and an alderman on the City Council. (Am. Compl ¶¶ 20, 23). The Application was eventually submitted to the City Plan Commission, which, after holding several public hearings, recommended to the City Council that the Application be approved. (Am. Compl. ¶¶ 28-29). The next stop for the Application was City Council's Finance Committee. This, apparently, is where the wheels fell off, and where Mirbeau alleges its Application became the victim of illicit back room dealings involving the defendant-alderpersons in this case. (Am. Compl ¶ 30). Rather than recommend that the full City Council approve or deny the Application, the Finance Committee allegedly recommended that the City Council use a public referendum to gauge public opinion on the Application. (Am. Compl ¶¶ 31-32).

Mirbeau alleges that the City Council then followed the Finance Committee's lead at its December 10, 2007 meeting, and voted to place a referendum question regarding the Application on the April 1, 2008 ballot. (Am. Compl ¶ 34). At that meeting, the city attorney allegedly advised council members against holding a referendum, and expressed his opinion that neither state law nor the City's procedures or ordinances allowed for it. (Am. Compl. ¶¶ 34-35). The City Council

did not heed the city attorney's advice, and allegedly delayed taking any action on the Application pending the April referendum. (Am. Compl ¶ 38). Mirbeau alleges that, because of the defendant-alderpersons' political machinations against it, the Lake Geneva electorate voted down the Application. (Am. Compl ¶¶ 39-42). Although the referendum was non-binding, Mirbeau alleges that defendants made clear their intentions to vote in accordance with the results of the referendum. (Am. Compl. ¶ 37). On April 28, 2008, five days after the Agreement's condition of Application approval expired, the City Council formally denied the Application. (Am. Compl ¶¶ 46-48).

**I.     STANDING**

Before turning to defendants' motion to dismiss, the court must consider whether Mirbeau has standing to bring this case in federal court. In its order raising the issue *sua sponte*, the court noted that the judicial power of the federal courts extends only to actual "cases" or "controversies." *See Allen v. Wright*, 468 U.S. 737, 750 (1984). In order to have standing under Article III, a plaintiff must allege an injury in fact, that is "fairly traceable" to the complained-of conduct, and that is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact is one that is "(a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.* at 560 (internal citations omitted). Put another way, a plaintiff must allege "a reasonable probability-not a certainty-of suffering tangible harm unless he obtains the relief that

-5-

Case 2:08-cv-00693-JPS   Filed 06/23/09   Page 5 of 15   Document 32

he is seeking in the suit" in order to establish constitutional standing. *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 744-45 (7th Cir. 2007). Because the court considers this case to present a close question of standing, a brief review of relevant case law is in order.

The most instructive Supreme Court precedent on the standing issue presented in this case comes from two cases decided over thirty years ago: *Warth v. Seldin*, 422 U.S. 490 (1975), and *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977). In *Warth*, a community organization and several individual residents of a New York town brought suit against the town and several town officials, claiming that the town's zoning ordinance excluded lower income persons from living in the town in violation of the Fourteenth Amendment. 422 U.S. at 493. A local home builders association sought to intervene in the suit, claiming that the town's zoning practices "arbitrarily and capriciously had prevented its member firms from building low- and moderate-cost housing in . . . [the town] . . . and thereby had deprived them of potential profits." *Id.* at 497. After delving into associational standing considerations not relevant to this case, the Supreme Court held that the builders association lacked standing because it had not alleged any of its constituent builders had been thwarted or delayed in any specific project, or in acquiring any building permit or variance as a result of the town's alleged unconstitutional conduct. *Id.* at 515-16. Therefore, there was no alleged injury-in-fact.

-6-

In *Village of Arlington Heights*, a developer seeking to build multi-family low and middle income townhouses in a suburban Illinois village brought suit against the village alleging that the village's refusal to rezone the property on which the development was to be built constituted impermissible discrimination under the Fourteenth Amendment. 429 U.S. at 254-55. The developer had a 99-year lease on the property, as well as a right to purchase it contingent on the developer obtaining the zoning changes necessary to move forward with the project. *Id.* at 256. Before moving to the merits of the developer's case, the Supreme Court held that the developer had standing to bring its suit in federal court. Noting that the developer was seeking injunctive relief against the village, the Court reasoned that the village's refusal to rezone stood as an absolute barrier to the building project for which the developer had contracted. *Id.* at 260-61. The Court held that the developer had the requisite personal stake in the controversy notwithstanding the fact that granting of the developer's requested relief would not guarantee the project would actually be built. *Id.* at 261-62. Therefore, there was an injury-in-fact.

Here, Mirbeau certainly alleges that it had concrete plans to develop the land in question. Mirbeau contracted with Geneva Ridge to purchase the land, and in its efforts to secure the necessary rezoning, Mirbeau alleges that it spent approximately $675,000. While Mirbeau has no present rights in the property for which the rezoning was sought, nor did Mirbeau have rights in the land at the time defendants actually decided on the Application, the court is convinced that Mirbeau has the

-7-

requisite personal stake in the controversy to support its standing. Its initial investment in the project was actual, concrete and particularized. Though recent events make it clear that no real estate venture is a sure thing, Mirbeau has alleged that it lost an opportunity to follow through on its planned development as a result of the defendant's actions. Therefore, the court finds Mirbeau has pleaded a sufficient injury-in-fact. Mirbeau has also alleged that its injury was fairly traceable to defendants' conduct. Mirbeau claims that defendants' unconstitutional conduct prevented a condition of closing from occurring, thereby foreclosing Mirbeau's opportunity to develop the land. And finally, this injury is likely to be redressed by a favorable decision in the form of monetary damages. Therefore, the court finds that Mirbeau has adequately demonstrated its standing to pursue its claims for damages. While the court has found no Seventh Circuit case directly on point, the court has found guidance in its standing analysis from a recent Third Circuit case with similar facts. *See Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131 137-44 (3d Cir. 2009).

Mirbeau's asserted claim for declaratory relief is, however, another story. "Standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), but rather must be demonstrated "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citation omitted). Declaratory judgment is a form of prospective equitable relief. Therefore, in order to have standing to bring a claim of declaratory relief under 42

U.S.C. § 1983, the plaintiff must demonstrate a realistic threat that it will be subject to the same unconstitutional conduct in the future as it allegedly suffered in the past. *See Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). Here, Mirbeau seeks a declaratory judgment proclaiming that defendants violated Mirbeau's due process and equal protection rights under the Constitution. (Am. Compl.¶¶ 61-63). Yet, Mirbeau's amended complaint alleges only past illegal conduct by defendants. Mirbeau has not alleged any future plans to seek rezoning in the City, or that defendants continue to resort to illegal means in making their zoning decisions. Therefore, the court finds that Mirbeau lacks standing to bring its fourth claim for declaratory judgment, and the court will dismiss that claim without prejudice. The court now turns to defendants' motion to dismiss.

**2. MOTION TO DISMISS**

Defendants move for dismissal of Mirbeau's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The court will grant a motion to dismiss only where it appears beyond doubt from the pleadings that the plaintiff can prove

-9-

no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Defendants first argue that Mirbeau's claims alleging violations of the Constitution must be dismissed because adequate state law remedies exist. Defendants assert that in order for Mirbeau to bring a § 1983 claim for constitutional violations, Mirbeau must first exhaust all available state law remedies. Mirbeau argues that defendants misstate the law, and that it did not need to exhaust state law remedies before asserting a claim under § 1983. At this point, a brief refresher on § 1983 claims is in order.

In order to prevail under 42 U.S.C. § 1983, a plaintiff must establish that the defendants deprived him or her of a federal constitutional right, and that the defendants acted under color of state law. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Over a quarter century ago, the Supreme Court held that exhaustion of state administrative remedies is not a prerequisite to bringing a federal claim under § 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982). One important exception to this rule comes into play when a plaintiff alleges what amounts to a violation of the Takings Clause of the Fifth Amendment. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-87 (1985). In such cases, a plaintiff must provide the relevant state regulatory agency an opportunity to make a definite decision, and must exhaust state remedies for just compensation before coming to federal court. *Id.* at 192-94. The

-10-

Seventh Circuit has made clear that the exhaustion requirements of *Williamson* cannot be avoided by labeling a takings claim as a procedural or substantive due process claim, or an equal protection claim. *See Forseth v. Village of Sussex*, 199 F.3d 363, 368-70 (7th Cir. 2000). With this framework in mind, the court now turns to each of Mirbeau's claims.

### A. Substantive and Procedural Due Process

In its amended complaint, Mirbeau alleges both procedural and substantive due process claims under the Fourteenth Amendment. On its procedural due process claim, Mirbeau alleges that defendants did not follow state law or City ordinances in considering its rezoning application, and thereby deprived Mirbeau of a fair and impartial hearing without due process of law. On its substantive due process claim, Mirbeau alleges that defendants' use of the referendum procedure to decide on Mirbeau's rezoning application constituted an arbitrary and capricious exercise of government power. Defendants claim that Mirbeau's due process claims are not ripe because Mirbeau did not exhaust state law remedies under *Williamson*. This argument is missplaced. For irrespective of whether state law remedies have been exhausted, Mirbeau has not stated federal claims under the Due Process Clause of the Fourteenth Amendment.

The Seventh Circuit's decision in *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994), makes this abundantly clear. In *River Park*, the owner of a country club in an affluent Chicago suburb wanted to build a residential

-11-

subdivision on the club's golf course, and sought rezoning from the city for that purpose. *Id.* at 165. However, local sentiment turned against the country club owner, and the city tabled the rezoning application. The country club owner went belly-up as a result, and its lender foreclosed on the property. *Id.* Naturally, the country club owner sued the city, claiming a violation of the Due Process Clause of the Fourteenth Amendment. *Id.* The district court dismissed the case under Rule 12(b)(6), and the Seventh Circuit affirmed, holding that the country club owner had failed to state a federal claim. *Id.* at 166-67. Judge Easterbrook began the court of appeals' opinion by stating "[f]ederal courts are not boards of zoning appeals," and went on to cite specific examples of acceptable zoning practices under the Due Process Clause, including putting zoning questions to a referendum without a hearing, and using political maneuvering to avoid decisions on zoning questions. *Id.* at 165-66. The court of appeals reasoned that regardless of whether a claim is labeled as substantive or procedural due process, "the idea in zoning cases is that the due process clause permits municipalities to use political methods to decide, so that the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts." *Id.* at 167.

Like the country club owner in *River Park*, Mirbeau alleges that local officials abdicated their responsibilities as alderpersons and skirted local and state law procedures. This is a matter of state law, not federal law. Moreover, Wisconsin law provides adequate remedies to challenge defendants' zoning determinations,

-12-

including the common law writ of certiorari which Mirbeau includes in its amended complaint. *See* Wis. Stat. §§ 68.001-68.14; *Forseth*, 199 F.3d at 373 (noting availability of Wisconsin's common law writ of certiorari to challenge zoning decisions). Therefore, the court is obliged to grant defendants' motion with respect to Mirbeau's § 1983 claims alleging violations of the Due Process Clause.

### B. Equal Protection

Mirbeau also alleges that defendants denied it equal protection of the laws under the Fourteenth Amendment by treating Mirbeau differently than others applying to the City for rezoning. Defendants assert that this claim should also be dismissed for failure to exhaust state law remedies under the *Williamson* exception. While *Williamson* can apply to equal protection claims, it does not apply here.

A plaintiff may state an independent equal protection claim in a land-use context by demonstrating "a governmental action wholly impossible to relate to legitimate governmental objectives." *Forseth*, 199 F.3d at 370-71 (citations and internal quotation marks omitted). The Seventh Circuit has recognized equal protection claims based on subjective ill will, where a plaintiff shows "malicious conduct of a governmental agent, in other words, conduct that evidences a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Id.* at 371 (citations and internal quotation marks omitted). The Supreme Court has also recognized so-called "class of one" equal protection claims in the land use context, where a plaintiff alleges he or she was "intentionally treated differently from others

-13-

similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Mirbeau alleges that defendants treated it differently from other rezoning applicants without any rational basis. (Am. Compl. ¶ 59). Mirbeau also claims that defendants acted maliciously in denying its rezoning application. (Am. Compl. ¶ 48). Accepting these allegations as true, the court finds that Mirbeau has stated a federal equal protection claim. As a result, the court will deny defendants' motion to dismiss with respect to Mirbeau's federal equal protection claim brought under 42 U.S.C. § 1983.

Finally, the court notes that defendants' motion to dismiss does not directly advocate for, or otherwise address, the dismissal of Mirbeau's state law claims. Therefore, the court declines to consider the merits of those claims at this juncture. Moreover, it is not apparent to the court that declining to exercise supplemental jurisdiction over Mirbeau's state law claims would be appropriate in this case. *See* 28 U.S.C. § 1367(c).

In light of today's rulings, the court will grant the parties 10 days' leave to file an amended proposed scheduling order which conforms with the court's September 12, 2008 order. (Docket #9).

Accordingly,

**IT IS ORDERED** that plaintiff's motion to amend or correct its complaint (Docket #21) be and the same is hereby **GRANTED**; pursuant to Civil Local Rule

-14-

15.1, the Clerk is directed to file the proposed amended complaint (Docket #22) as the amended complaint in this action.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (Docket #12) be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that plaintiff's procedural and substantive due process claims brought pursuant to 42 U.S.C. § 1983 (first and second claims for relief) be and the same are hereby **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that plaintiff's claim for declaratory judgment (fourth claim for relief) be and the same is hereby **DISMISSED** without prejudice;

**IT IS FURTHER ORDERED** that the parties shall file an amended proposed scheduling order, pursuant to the court's September 12, 2008 order (Docket #9), on or before **July 3, 2009**.

Dated at Milwaukee, Wisconsin, this 23rd day of June, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge